**Jaitsen J. SINGH, Petitioner–Appellant,**

v.

**K.W. PRUNTY, Warden; Attorney General of the State of California, Respondents–Appellees.**

No. 96–56726.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1998.

Decided April 27, 1998.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, California, for petitioner-appellant.

Sara Gros–Cloren, Deputy Attorney General, San Diego, California, for respondents-appellees.

Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.

LAY, Circuit Judge:

Jaitsen J. Singh, a California state prisoner, appeals the denial of his petition for a writ of habeas corpus. We reverse and grant the petition.

*Factual and Procedural Background*

This case arises out of a series of bizarre events culminating in Singh's convictions for murder and for solicitation to commit murder. The State of California convicted Singh of hiring an assailant or assailants (still unknown) to murder his wife, Grace, and his seventeen-year-old stepdaughter, Daphne. The murders occurred on August 27, 1983. On that date, Grace and Daphne disappeared from the Singhs' residence. The home had apparently been burglarized, and police found a bloody baseball bat in the hall. Singh told police the assailant(s) had stolen cash and jewelry. However, the evidence shows that sometime before the murders, Singh gave the jewelry to his girlfriend, Martha Meza.

Police found the bodies of Grace and Daphne in the trunk of Grace's car, which had been abandoned in Los Angeles. The women had been strangled with electrical cords (removed from Singh's home), beaten, and stabbed. The record is replete with circumstantial evidence pointing to Singh's knowledge of and motive for a planned murder of Grace and Daphne. However, the State concedes Singh did not kill Grace and Daphne, as Singh was on a hunting trip at the time of the murders.[1]

Police did not make any arrests for the murders until early April 1984. On April 3, 1984, Raymond R. Copas, who was in jail on that date, approached police claiming to have information on the Singh murders. Copas apparently told police that Singh had previously tried to hire him to murder Grace. Copas was a known heroin user and an admitted heroin addict. He had a long criminal record involving several burglaries and heroin-related offenses. The record in this case indicates Copas financed his heroin use through a series of burglaries and thefts.

Shortly after Copas approached police with this information, police arrested Singh. Copas testified at Singh's preliminary hearing held in May 1984. Despite Copas' testimony at the hearing, charges against Singh were dismissed. Singh was not bound over for trial until after a second preliminary hearing held in March 1985.

At Singh's trial, Copas testified on behalf of the State. Copas testified that in January 1983, Johnny Vasquez, a mutual acquaintance of Copas' and Singh's, contacted him and introduced him to Singh, because Singh wanted to hire Copas to murder Grace. The plan, according to Copas, was for Copas to ambush Grace at home, hit her over the head with a baseball bat, and put her body in the trunk of a car. Singh allegedly told Copas to make the house look like a robbery had occurred. According to Copas, Singh directed him to abandon Grace's car in Los Angeles or Palm Springs following the murder, and Singh told Copas he would pay him $10,000 out of insurance money Singh expected to receive in the near future. Copas testified he did not carry out the murder, and when Singh called to ask why he had not done so, he told Singh he would do it in his own time. Copas said he later assumed the murder contract was over.[2] Copas testified at trial that the reason he approached police with the information was because he was bothered about Daphne's murder.

---

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. The State asserts the hunting trip was a ruse, and Singh arranged it to give himself an alibi.

2. Copas' relationship with Singh was apparently not over. According to Copas, Singh later hired him to beat up a man, and he paid Copas $300 for the job.

Following his convictions, Singh appealed to the California Court of Appeal. The court of appeal affirmed Singh's convictions in an unpublished opinion, and the California Supreme Court denied review.

## A. *State Habeas Proceedings*

Thereafter, Singh filed a petition for a writ of habeas corpus in the Superior Court of the State of California for the County of San Bernardino. Singh claimed the State violated the requirements set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), thereby denying him due process and a fair trial. He argued the State's prosecutor, Dennis Stout, did not disclose to him or to his counsel evidence that Copas had been promised certain benefits in exchange for his testimony.[3] Singh also urged that Copas had lied during trial when asked about his recent heroin use, and Stout knowingly allowed Copas to present this false testimony.

The superior court judge[4] held an evidentiary hearing. After the hearing, the court found Stout had entered into an agreement with Copas and Copas' counsel to provide Copas with benefits in exchange for his testimony against Singh, and Stout did not disclose evidence of the agreement to Singh's counsel. The court also concluded Copas had probably lied at Singh's murder trial when he denied using heroin prior to his trial testimony, and Stout knew or should have known that Copas was still a heroin addict at that time. The superior court granted the writ, concluding the prosecution's error of failing to disclose evidence of the agreement was not harmless beyond a reasonable doubt, *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967),[5] and under *Brady*, the State had denied Singh his

constitutional rights to due process and a fair trial.

The State appealed to the California Court of Appeal. The court of appeal concluded the evidence presented during the evidentiary hearing was not sufficient to sustain the Superior Court's ruling that Copas had lied at Singh's trial when he denied he used heroin before his trial testimony.[6] The court did find, however, that the evidence presented during the evidentiary hearing was sufficient to support a finding of some agreement to provide beneficial treatment to Copas in exchange for his testimony at Singh's trial. Nonetheless, the appellate court concluded the State's nondisclosure did not violate Singh's constitutional rights. The court reached this conclusion after finding that under the overall circumstances of the case, there was no reasonable probability that had the evidence of benefits been disclosed to the defense, the result of Singh's trial would have been different. The court reversed, observing the evidence against Singh was "crushing." *Singh*, No. E014389, slip op. at 29. Singh appealed, and the California Supreme Court denied review.

## B. *Federal Habeas Proceedings*

Singh then filed a petition for writ of habeas corpus in the United States District Court pursuant to 28 U.S.C. § 2254. In his petition, Singh alleged two grounds for relief. First, Singh alleged the prosecution denied him due process and a fair trial when it suppressed evidence of an agreement by the prosecution to provide benefits to Copas in exchange for Copas' testimony at Singh's trial. Second, Singh alleged the prosecution knowingly allowed Copas to commit perjury regarding Copas' motivation for testifying and his recent heroin use.

---

3. These benefits, discussed *infra*, related to favorable treatment Copas received regarding his various criminal charges and convictions.

4. The Honorable Kenneth G. Ziebarth, Superior Court of the State of California for the County of San Bernardino.

5. The harmless error rule no longer applies to *Brady* violations. *See Kyles v. Whitley*, 514 U.S. 419, 435–36, 115 S.Ct. 1555, 1566–67, 131 L.Ed.2d 490 (1995).

6. The court reached this conclusion after finding that Copas' 1991 declaration (presented as part of the state habeas proceeding), in which he said he lied about his heroin use during Singh's trial, was inadmissible hearsay under California evidentiary rules. *People v. Singh*, No. E014389, slip op. at 27 (Cal.Ct.App. Aug. 15, 1995) (citing Cal. Evid.Code § 1230).

The United States Magistrate Judge [7] found the State provided benefits to Copas after Copas initially approached police and after he testified at Singh's preliminary hearing. Despite this conclusion, the magistrate judge rejected Singh's petition. She found the trial evidence of Singh's culpability to be overwhelming even without Copas' testimony. The magistrate judge also emphasized that additional evidence corroborated Copas' testimony.

The magistrate judge acknowledged that the test for determining materiality of evidence suppressed by the prosecutor is not sufficiency of evidence. *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1565–66. However, the magistrate judge, in weighing whether there was a reasonable probability of a different result, outlined the evidence implicating Singh in the murders. She observed:

> Extremely damaging evidence against Petitioner included: (1) Petitioner and his wife had combined earnings of only $22,000 in 1983, yet paid over $200 a month for 1.2 million dollars in life insurance; (2) Petitioner earned only $10,000 in 1983, yet told Victor Vasquez and Martha Meza that he would have a lot of money soon; (3) the testimony of Wendell Wixom concerning Petitioner's request to obtain "tasteless, fast acting, untraceable" poisons; (4) Petitioner's diagram of his residence seemingly showing the plan for the murders, for which Petitioner provided an unconvincing explanation; (5) Petitioner's engagement to [Martha] Meza a week before the murders; (6) Petitioner's statement to Meza a week before the murders that he wanted his wife and stepdaughter dead; (7) Petitioner's statements regarding his intent: that no one walks away from him and that he knows how to shut people up; (8) Petitioner's peculiar "hunting" trip which conveniently gave Petitioner an alibi for the exact time of the murders, alibi witnesses, and a reason to remove all the guns from the residence; (9) Petitioner's uncanny "feeling" the victims were "gone" after seeing books stacked on the floor; (10) Petitioner's lie to police that the gold jewelry had been stolen when Petitioner had given the jewelry to Meza; (11) Petitioner's decision to contact his life insurance agent the day after the murders, even though his relationship with the agent was "strictly business"; (12) Petitioner's attempts to persuade witnesses to lie; and (13) the implausibility of Petitioner's attempts to explain away a wealth of incriminating evidence against him.

*Singh v. Prunty*, No. CV–96–0057 (C.D.Cal. 1996) (magistrate judge's report and recommendation) (citations omitted).

The magistrate judge also emphasized the evidence corroborated Copas' testimony regarding Singh's involvement in the murders. She observed:

> The "murder" took place in a manner similar to Copas' description.[8] The diagram found in Petitioner's Labor and Materials notebook detailed almost exactly Copas' version of the plan Copas had testified he and Petitioner had plotted. Johnny Vasquez testified he introduced Copas to Petitioner because he knew Petitioner wanted someone to do a job. Copas accurately could describe the interior and exterior of Petitioner's residence. Copas knew Petitioner's residence had a Genie garage door opener and knew a garage door opener was kept in the glove box of Grace's car. Copas knew what time Grace went to work every day. Copas knew about the insurance money prior to press disclosure of the insurance. Additionally, Petitioner himself unwittingly corroborated Copas' testimony by referring to Copas in the letter Petitioner sent to Victor [Vasquez] even though the police had not yet revealed Copas' identity. Moreover, none of the

---

7. The Honorable Virginia A. Phillips, United States Magistrate Judge for the Central District of California.

8. Singh's attorney points out that if Copas were the actual perpetrator of the murders (the evidence strongly suggests such a possibility), Copas could easily attribute to Singh the "plan" that Copas actually pursued in committing the murders in order to remove any suspicion against him, and to gain favorable treatment as to his own criminal charges. *See* Appellant's Br. at 44. Given this possibility, the conclusion that Copas' earlier statements corroborate his testimony is highly questionable.

substance of Copas' testimony was ever retracted or recounted by Copas.

*Id.* (footnote added).

On this basis, the magistrate judge concluded the evidence of the agreement between Copas and the prosecution was not material, because there was no reasonable probability that had evidence of the agreement had been disclosed, the result of Singh's trial would have been different.[9] The district court[10] adopted the report and recommendations of the magistrate judge and denied the petition with prejudice. This court granted a certificate of probable cause to appeal, and this appeal followed.

### Discussion

Singh makes essentially the same contentions to this court that he made to the district court. The primary issue in the present appeal is whether the district court correctly concluded that the undisclosed evidence of an agreement to provide benefits to Copas in exchange for his testimony at Singh's trial was not material. Our *de novo* review of the record in this case compels us to conclude the district court's decision was not correct.

### Materiality of the Undisclosed Evidence

■ The requirements of due process obligate a prosecutor to disclose material exculpatory evidence on its own motion and without request. *See Kyles v. Whitley,* 514 U.S. 419, 432–34, 115 S.Ct. 1555, 1564–66, 131 L.Ed.2d 490 (1995); *United States v. Agurs,* 427 U.S. 97, 107–08, 96 S.Ct. 2392, 2399–400, 49 L.Ed.2d 342 (1976). "Evidence impeaching the testimony of a government witness falls within the *Brady* rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *United States v. Brumel–Alvarez,* 991 F.2d 1452, 1458 (9th Cir.1992) (citing *Giglio v.*

*United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)).

■ The prosecutor's nondisclosure of the benefits given to Copas in exchange for his testimony violated Singh's right to due process and a fair trial only if the undisclosed evidence was material. *See United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383. As the Supreme Court has observed: "A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles,* 514 U.S. at 434, 115 S.Ct. at 1566 (citing *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381).

■ We begin our assessment of the materiality of the undisclosed evidence of an agreement to provide benefits to Copas in exchange for his testimony by appraising the importance of Copas' testimony to the prosecution's case. Police did not arrest Singh until after Copas approached police with information about Singh's alleged attempt to hire Copas to murder Grace. The prosecution conceded Singh did not kill Grace and Daphne, and only circumstantial evidence tied Singh to the murders. An important theory of the prosecution's case was that since Singh had once tried to hire Copas to murder Grace, he later hired some other individual or individuals to carry out the murder. It is likely the jury had to believe Copas' testimony in order to believe the prosecution's theory. For these reasons, Copas was the key witness who linked Singh to the murder-for-hire scheme. Therefore, we

---

9. The judge deferred to the state habeas appellate court's finding that any evidence Copas testified falsely concerning his heroin use was inadmissible hearsay. Thus, the judge concluded the prosecution did not make knowing use of perjury regarding Copas' heroin use before trial.

Further, the judge noted that at trial, Copas was only asked why he originally gave his statement to police. Defense counsel did not question Copas regarding his motivation for testifying

at Singh's trial. Thus, the judge concluded Copas did not perjure himself when he testified about his motivation for originally approaching police with information about the murders, and therefore, the prosecution did not make knowing use of perjury regarding benefits to Copas.

10. The Honorable Robert J. Timlin, United States District Judge for the Central District of California.

deem it obvious that Copas' credibility was vital to the prosecution's case.[11]

The record in this case demonstrates Copas received substantial benefits after approaching police with information regarding the Singh murders. On April 7, 1984, police arrested Copas on a theft charge. The charge was later rejected for prosecution by the San Bernardino County district attorney's office. On December 9, 1984, police arrested Copas for burglary. The next day, the district attorney's office rejected this charge for prosecution. On April 12, 1985, police arrested Copas on a charge of being under the influence of heroin. Three days later, Copas was released on his own recognizance.

On May 12, 1985, police arrested Copas for a March 28, 1985 [12] burglary as well as for narcotics use and petty theft. On May 15, 1985, Stout made an unprecedented appearance on behalf of Copas and made a motion for the release of Copas on his own recognizance. Copas eventually obtained multiple continuances of the March 28, 1985 burglary charge. On August 1, 1985, the State dismissed six charges pending against Copas involving theft, narcotics, and traffic offenses, in return for Copas' plea of guilty to the March 28th burglary charge. Sentencing on this charge was repeatedly delayed until March 19, 1986.

Meanwhile, police arrested Copas on December 1, 1985 for a new burglary charge. This matter was repeatedly continued until February 5, 1986, when Copas pleaded guilty to the charge as a result of a plea agreement between Copas' defense counsel and the deputy district attorney. Citing Copas' efforts as a citizen in Singh's murder trial, the presiding judge approved a plea agreement whereby Copas would serve a maximum of one year in jail.

In March 1986, Copas was sentenced for both the March 1985 burglary and the December 1985 burglary. Copas received three years limited supervised probation on the March 1985 burglary with a requirement that he serve 365 days in jail. He received a suspended sentence for the December 1985 burglary. Sometime later, Copas asked the sentencing judge for a reduced sentence on account of his testimony in the Singh case. Stout recommended that Copas' sentence be reduced on condition that the court order Copas to return to court to testify at the hearing on Singh's motion for a new trial. The court reduced Copas' sentence and modified it to credit the 151 days Copas had already served. The court ordered Copas to return to court to testify at Singh's motion for a new trial.

Copas received substantial benefits in exchange for his testimony at Singh's trial. Disclosure of an agreement to provide such benefits, as well as evidence of the benefits themselves, could have allowed the jury to reasonably conclude Copas had a motive other than altruism for testifying on behalf of the State. Such a finding could have substantially impeached Copas' credibility as a witness.

Although the magistrate judge acknowledged that evidence of the benefits to Copas was impeachment evidence that could have undermined Copas' credibility as a witness, the magistrate judge weighed this evidence against "the likelihood that Copas' credibility would have been rehabilitated, because Copas' first statement to police was made without any deals, and the essence of that statement was consistent with Copas' trial testimony." *Singh v. Prunty,* No. CV–96–0057 (C.D.Cal.1996) (magistrate judge's report and recommendation). The magistrate judge later concluded "Copas' prior consistent statement to police would have rehabilitated Copas and rendered even the addi-

---

**11.** It appears Copas' credibility was also vital to the prosecution's successful opposition to Singh's motion for a new trial. During the hearing on Singh's motion, an individual named Andrew Larry testified that while he was incarcerated in the same institution as Copas, Copas told him he could get Singh off for a price, and Copas had pinned the murders on Singh to get out of his own legal trouble. At the hearing, Copas testi-

fied he never made such statements to Andrew Larry.

**12.** Police first arrested Copas for this burglary on March 28, 1985, but later released him because initial police reports were insufficient to support the charge.

tional impeachment evidence of marginal consequence. In any event, Copas was never impeached concerning the substance of his testimony against [Singh]." *Id.* (footnote omitted).

The conclusion that Copas' credibility would have been rehabilitated because of his prior consistent statements to police fails to acknowledge the circumstances surrounding those statements. Copas was in jail when he first contacted the police with information about his prior dealings with Singh. After providing police with the information, he was released from custody. Copas gained release notwithstanding a pending a five-count theft case against him and the fact that he was on probation for a 1981 assault conviction and a 1982 trespass charge. A jury apprised of these circumstances could have concluded that Copas' prior consistent statements to police were given for reasons other than Copas' claimed concern over Daphne's murder.

We recognize that conflicting arguments can be made regarding the effect the disclosure of the evidence of benefits to Copas may have had on Copas' credibility as a witness. However, our fundamental concern remains whether there exists a reasonable probability that given disclosure of the evidence of benefits to Copas, one or more members of the jury would have viewed Copas' testimony in a different light. Given the importance of Copas' testimony to the prosecution's case, and the impact the disclosure of evidence of the benefits provided to Copas could have had on Copas' credibility, we believe there is a reasonable probability that had the evidence been disclosed to the defense, one or more members of the jury could have viewed Copas' testimony differently.

Furthermore, evidence of these benefits would have undermined the state prosecutor's closing argument. During that argument, Stout asserted:

> Take a look at the motive of each and every witness that testified in this case as to why they would fabricate and lie. And you'll find out that the only one in here that came up with—that has a real motive for lying and fabricating is the defendant.... There's been no shenanigans, no

hiding anything. No attempts to deceive by anyone's part in this particular case. *See* Appellant's Br. at 20.

During the evidentiary hearing on Singh's state habeas petition, Stout conceded it might have been "the kiss of death" to the State's case if the jury heard Copas was in essence being rewarded for his testimony with some kind of benefits. With all due respect to the state court of appeal, which felt otherwise, we deem Stout's candid concession to be highly significant. In the adversarial process, the prosecutor, more than neutral jurists, can better perceive the weakness of the state's case. After all, it is the prosecutor who has the duty to determine whether the information is material and whether it should be disclosed. *See Kyles,* 514 U.S. at 437, 115 S.Ct. at 1567.

> As Justice Souter recently observed:
>
> [T]he prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached.... [A] prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.

*Kyles,* 514 U.S. at 437, 439, 115 S.Ct. at 1567, 1568. In this case, we conclude Stout "tack[ed] too close to the wind."

### Conclusion

The prosecution's suppression of evidence of the agreement to provide benefits to Copas in exchange for his testimony undermines our confidence in the outcome of Singh's trial. The suppressed evidence was therefore material, and due process required its disclosure. *See Kyles,* 514 U.S. at 434, 115 S.Ct. at 1565–66.

We find strong support for our conclusion in the opinion of Judge Ziebarth, the judge who initially addressed Singh's state habeas petition and the only judicial officer to conduct an evidentiary hearing on Singh's petition. Following this hearing, Judge Ziebarth concluded:

> This court has reviewed and considered the pertinent parts of the trial transcript

that was stipulated by counsel to be a part of the evidence in this matter. The prosecution produced a lot of circumstantial evidence during the petitioner's trial that points toward his guilt of the charged offenses. However, the contents of the trial record make it clear that Ray Copas was the key witness for the prosecution. His credibility as a witness was a vital factor in the prosecution's case.

Had the jury been made aware of the facts regarding Copas which were discussed above that Mr. Stout failed to disclose to defense counsel or to the jury, the jury's assessment of the credibility of Mr. Copas could have been greatly affected. It is conceivable that different verdicts would have resulted.

*In re Singh,* No. WHC 2262, slip op. at 17 (Cal.Super.Ct. Feb. 16, 1994).

We acknowledge that the magistrate judge cited evidence implicating Singh in the murders that is independent of Copas' testimony. However, it should be kept in mind that Copas, a heroin addict at the time he approached police claiming to have information on the Singh murders, could have easily fabricated his statement implicating Singh in order to facilitate his own gain. Because of the stark reality of this possibility, this circuit has stated that when a witness is a heroin addict who provides evidence against a defendant for some personal advantage or vindication, it is appropriate for a court to give the jury an instruction indicating that these circumstances may affect the witness' credibility, and the jury should therefore consider the witness' testimony with greater care than that of an ordinary witness. *See, e.g., People of the Territory of Guam v. Dela Rosa,* 644 F.2d 1257, 1259–61 (9th Cir.1980). In the event the jury had concluded Copas lacked credibility and had fabricated his testimony regarding Singh's attempt to hire Copas to murder Grace, it is entirely speculative to conclude that the same jury would have nonetheless convicted Singh. In light of the overall record, and the prosecution's knowing and deliberate suppression of the

evidence of benefits given to Copas because disclosure of the evidence would have substantially weakened the State's case, the probabilities of a different outcome in Singh's trial, had the evidence been disclosed, preponderate in favor of Singh rather than the State.

The judgment is reversed. This case is remanded to the district court with directions to issue an unconditional writ of habeas corpus unless the State of California grants a new trial to Singh within a reasonable time following issuance of the district court's order.[13]

REVERSED.

---

**13.** Because of our conclusion that the State's suppression of evidence violated Singh's constitutional rights to due process and a fair trial, we

do not address Singh's allegations that the State knowingly allowed Copas to commit perjury during his trial testimony.