144 F.3d 613
 98 Cal. Daily Op. Serv. 3506, 98 Daily Journal
D.A.R. 4834
Robert Wayne VICKERS, Petitioner-Appellant,
v.
Terry STEWART, Director of the Arizona Department of
Corrections and Meg Savage, Warden of Arizona
State Prison, Florence Complex,
Respondents-Appellees.
 No. 96-99022.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 31, 1998.
Decided May 8, 1998.
Order Denying Rehearing and Suggestion for Rehearing En
Banc July 15, 1998.
 
 Alan M. Kyman, Joanne F. Landfair, Phoenix, Arizona, for petitioner-appellant.
 Grant Woods, Atty. Gen., Paul J. McMurdie, Chief Counsel Criminal Appeals Section, Jack Roberts, Asst. Atty. Gen., Phoenix, Arizona, for respondents-appellees.
 Appeal from the United States District Court for the District of Arizona Paul G. Rosenblatt, District Judge, Presiding. D.C. No. CV-92-00913-PGR.
 Before: SCHROEDER, RYMER and THOMAS G. NELSON, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 Appellant Robert Vickers was an inmate on Arizona's death row when he burned a fellow inmate to death by splashing burning liquid through the food slot of the victim's cell. Vickers started the fire with an incendiary device he created by pouring bottles of hair tonic into an empty ice cream container, stuffing a tissue inside and lighting it. A jury convicted Vickers of first degree murder and the trial judge sentenced him to death. This is an appeal from the district court's denial of Vickers' first federal petition for writ of habeas corpus.
 
 
 2
 The facts are set forth in the Arizona Supreme Court's opinion affirming the conviction and sentence. State v. Vickers, 159 Ariz. 532, 768 P.2d 1177 (1989). They are not materially disputed. Immediately preceding the burning, Vickers had shown to the victim, Wilmar "Buster" Holsinger, a letter and drawing from his niece. This elicited an obscene comment from Holsinger about the niece. Vickers at the time was on clean up-duty in the central area of a "pod" containing four death row cells. Vickers returned to his cell, made the incendiary device and repeatedly splashed the burning liquid into Holsinger's cell while the prison guard was absent from the pod emptying trash. In addition to killing Holsinger, the other occupants of the pod suffered from smoke inhalation from the fire. After pulling Vickers from the pod area, a guard asked him what had happened and he replied "I burned Buster." When asked whether Buster was dead, Vickers stated, "he should be, he is on fire." Vickers has at all times acknowledged that he caused the fire and the death.
 
 
 3
 Although Vickers raises numerous issues in this appeal, only one merits serious discussion; that is his claim that he was denied due process when the trial court denied his request for out-of-state psychiatric testing to determine whether he had temporal lobe epilepsy. Vickers argues here, as he did on direct appeal, that his due process rights were violated by the state's failure to order diagnostic testing. He relies on Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985), which held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense."
 
 
 4
 When the Supreme Court denied certiorari in Vickers' state court appeal, Justices Marshall and Brennan dissented, urging that the Court should "decide whether the Constitution requires a State to provide an indigent defendant access to diagnostic testing necessary to prepare an effective defense...." Vickers v. Arizona, 497 U.S. 1033, 1033, 110 S.Ct. 3298, 3298, 111 L.Ed.2d 806 (1990). We need not address that question directly here, for our review of the record in this case convinces us that the particular testing requested by Vickers was not "necessary to prepare an effective defense," and, further, that the trial court took careful steps to ensure that it made an informed decision on that issue.
 
 
 5
 Vickers' defense at trial was insanity based on temporal lobe epilepsy ("TLE"). TLE is a brain disorder that can cause violent behavior and render a person unable to appreciate the nature and wrongfulness of his acts. Unlike Ake, where the state provided no psychiatrically expert assistance in the preparation of the defense, the trial judge in this case appointed a psychiatrist, Dr. Bindelglas to determine Vickers' competency to stand trial and to assist in his defense. He appointed Dr. Tuchler for the state.
 
 
 6
 At the competency hearing, both Dr. Bindelglas and Dr. Tuchler testified that Vickers may have TLE, but that diagnostic testing was necessary for certainty. The defense then requested out-of-state testing on the basis of Dr. Bindelglas' opinion that because no facilities in Arizona were suitable for the necessary testing, the defendant would have to be transported to an out-of-state facility and undergo observation for several weeks.
 
 
 7
 The trial court then asked both the defense and the state to provide the name of an additional expert who could examine Vickers, and provide further information on whether out-of-state testing should be ordered. Vickers' counsel did not respond and the state submitted the name of Dr. Masland. Dr. Masland concluded that there was nothing to suggest that Vickers suffered from TLE, relying upon his own observations and observations of others who had had close contact with Vickers and had never observed any epileptic seizures. The district court denied the motion for testing.
 
 
 8
 Dr. Bindelglas testified at trial that Vickers may well have TLE, and that if he had been suffering a seizure at the time of the offense, he would not meet the applicable standard for sanity, i.e. the knowledge of right from wrong. However, Dr. Bindelglas, along with every other expert who provided evidence in the case, agreed that no amount of testing could establish whether Vickers had in fact suffered a seizure at the time of the offense. Thus, even if the testing had shown that Vickers did suffer from TLE, that diagnosis would not materially assist the jury to decide the critical question: whether Vickers was suffering a seizure at the time of the homicide. Indeed, if the testing had been ordered and had resulted in a finding that Vickers did not have TLE, the defense would have been seriously undercut. Dr. Bindelglas would not have been able to testify at trial that there was a "definite probability that Vickers had TLE." Accordingly, the diagnostic testing cannot be said in this case to have been "necessary to prepare an effective defense."
 
 
 9
 In addition, the heavy weight of the evidence both at trial, and upon which the trial court relied when it denied the motion for out-of-state testing, was that Vickers did not have TLE. This was the opinion of Dr. Masland as well as Dr. Tuchler, who both examined Vickers, and another doctor, Dr. LaWall. Indeed, after examining Vickers' medical records, talking with corrections personnel about Vickers' behavior, and examining Vickers, Dr. Masland concluded:
 
 
 10
 In short, he has been under intense scrutiny, including that of trained medical personnel, for a number of years. Historically, there is absolutely nothing to suggest that this man is epileptic. The intensity of the observational data is so high, that further diagnostic testing, such as electroencephalography, would be totally superfluous.
 
 
 11
 Moreover, there was little to suggest that Vickers was suffering from a TLE seizure, and hence unable to differentiate right from wrong when he committed the complex series of acts that led to Holsinger's death. No evidence existed of any of the symptoms of such a seizure, such as uncontrollable behavior and amnesia. Vickers remembered and admitted the burning immediately afterward, and more than six months later referred to the burning in a letter to the medical examiner.
 
 
 12
 For these reasons the trial court did not deny Vickers due process when it denied his request for extensive out-of-state diagnostic testing to determine whether Vickers had a condition that could not have been demonstrated to be responsible for the conduct in question.
 
 
 13
 We address the remainder of Vickers' contentions summarily.
 
 Manslaughter Instruction
 
 14
 Vickers contends that his constitutional rights were violated because he was entitled to an instruction on manslaughter, to permit the jury to find that the killing was either reckless or provoked. The district court properly held that the evidence did not show a reckless killing, and that words alone are insufficient provocation to reduce a homicide to manslaughter in Arizona. See State v. Vickers, 768 P.2d at 1187.
 
 Premeditation
 
 15
 Vickers contends that there was insufficient evidence to prove premeditation. The district court correctly found there was sufficient evidence because after the alleged provocative statement, Vickers had engaged in a meditated series of acts preparatory to sloshing the liquid through a slot to reach the victim. See id. at 1186 (premeditation may be as "instantaneous as successive thoughts of the mind") (citations omitted).
 
 Prior Bad Acts
 
 16
 Vickers contends his constitutional rights were violated when the trial court permitted the state to cross-examine Dr. Bindelglas about Dr. Bindelglas' direct testimony concerning Vickers' prior acts of random violence. The direct testimony was part of the deliberate defense strategy to link Vickers' violence with TLE. There was no due process violation because his prior acts were placed before the jury by his defense as part of its own strategy. See Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (federal habeas review limited to a determination of whether the alleged error of state law "so infected the trial with unfairness as to deny due process of law").
 
 Miranda
 
 17
 Vickers argues that the introduction of his incriminating statements made to officers immediately after the murder violated Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is no custodial interrogation when asking what happened in an emergency situation. See Cervantes v. Walker, 589 F.2d 424, 427 (9th Cir.1978) ("on-the-scene questioning does not require Miranda warnings" even if in prison). Nor was Vickers' physical condition in the squad room so bad as to render his statements involuntary. Cf. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
 
 Ineffective Assistance of Rule 32 Counsel
 
 18
 Vickers argues he received ineffective assistance of post-conviction counsel in his state court post-conviction proceeding. There is no constitutional right to counsel in state collateral proceedings. See Coleman v. Thompson, 501 U.S. 722, 755, 111 S.Ct. 2546, 2567-68, 115 L.Ed.2d 640 (1991); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir.), cert. denied, 516 U.S. 1143, 116 S.Ct. 980, 133 L.Ed.2d 899 (1996).
 
 Arizona Death Penalty Statutes
 
 19
 Vickers argues the Arizona practice requiring the judge to decide factual issues in sentencing is unconstitutional. This argument is foreclosed by Walton v. Arizona, 497 U.S. 639, 648-49, 110 S.Ct. 3047, 3054-55, 111 L.Ed.2d 511 (1990).
 
 
 20
 In 1993, the Arizona statute providing for death by lethal gas was changed to provide for death by lethal injection. Ariz.Rev.Stat. § 13-704. A defendant sentenced to death for an offense before November 1992, like Vickers, can choose either gas or injection. Vickers argues the change violates the Ex Post Facto Clause of the Constitution because it requires him to choose the method of execution, thereby enlarging his penalty. The district court properly denied relief, pursuant to Poland v. Stewart, 117 F.3d 1094, 1105 (9th Cir.1997), where we said that "[t]he change in method does not make the sentence more burdensome and so does not violate the Ex Post Facto Clause." Poland also requires rejection of Vickers' claim that execution by lethal injection is cruel and unusual. See id. at 1104.
 
 Aggravating Circumstances
 
 21
 There is no violation of federal law in the trial court's application of Ariz.Rev.Stat. § 13-703(F)(3) relating to the creation of "grave risk." See Estelle, 502 U.S. at 67, 112 S.Ct. at 479-80.
 
 
 22
 The district court correctly held that there was no indication that the trial court relied improperly on a 1979 conviction that had been overturned. Moreover, the Arizona Supreme Court independently found the existence of the aggravating circumstances. See State v. Vickers, 768 P.2d at 1190.
 
 
 23
 There was more than sufficient evidence to support the state's finding of "especially heinous, cruel or depraved" conduct as an aggravating factor. Vickers' argument that the death penalty statute is unconstitutional in requiring the defendant to establish mitigation is foreclosed by Walton v. Arizona, 497 U.S. at 650, 110 S.Ct. at 3055-56.
 
 Vickers' Youth
 
 24
 Vickers argues that the state court's refusal to consider his youth in mitigation violated his rights under Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Both the trial court and the Arizona Supreme Court discussed Vickers' age as a possible mitigating factor, however, and acted within their discretion in rejecting that age (23) as a mitigating factor. See State v. Vickers, 768 P.2d at 1191.
 
 Procedurally Barred Claims
 
 25
 The district court held many claims presented to have been procedurally defaulted unless Vickers could show cause and prejudice. Cause to excuse default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Coleman, 501 U.S. at 753, 111 S.Ct. at 2566. Prejudice is actual harm resulting from the alleged error. See Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir.1984).
 
 Investigative and Expert Funds
 
 26
 The district court did not abuse it discretion in denying Vickers' requested investigative and expert funds as Vickers' counsel did not demonstrate to the district court that the services were reasonable and necessary for adequate representation. See Bonin v. Calderon, 59 F.3d 815, 837 (9th Cir.1995), cert. denied, 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996).
 
 Request for discovery
 
 27
 As Vickers did not request discovery until two weeks after the district court denied his habeas petition, the district court did not abuse its discretion in denying the request.
 
 
 28
 We have reviewed all of the claimed errors and conclude the district court properly ruled that there was no showing of cause or prejudice with respect to any. We have also reviewed the record in light of all the procedurally defaulted claims, and conclude there was no miscarriage of justice. See Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Vickers has not demonstrated cause for his failure to develop facts to entitle him to the requested evidentiary hearings. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 7, 112 S.Ct. 1715, 1718-19, 118 L.Ed.2d 318 (1992).
 
 
 29
 AFFIRMED.
 
 ORDER
 July 15, 1998
 
 30
 In his petition for rehearing, Vickers asks us to reconsider one of the claims that the district court dismissed for procedural default and failure to show cause and prejudice. That is a claim that the expert testimony of the state fire investigator rendered the trial fundamentally unfair. The state fire investigator's testimony bore on the issue of intent. Vickers stresses in his petition for rehearing that the fire investigator, David Dale, lied about his qualifications and urges us hold that the state violated the principle of Brady v. Maryland, 373 U.S. 83 (1963), in failing to disclose that information.
 
 
 31
 Vickers relies on our recent decision in Singh v. Prunty, 142 F.3d 1157, 1164 (9th Cir.1998), where we held that withholding of impeachment evidence violated Brady and was sufficiently prejudicial in the circumstances of that case to require a new trial. The government in Singh failed to disclose its own plea bargain made with a key prosecution witness.
 
 
 32
 Here, unlike Singh, however, the government did not know about Dale's lack of qualifications at the time of trial and can not be said to have wrongfully withheld information about it. In addition, Dale's testimony in this case was consistent with other evidence at trial, including Vickers' own admissions, that demonstrated that Vickers acted with intent. That other evidence showed Vickers' motive, his construction of the incendiary device, his killing the victim with burning liquid and, further, his expression of enjoyment over the act. As the prosecutor told the jury when in referring to Dale's testimony, "mostly what he did was confirm what we already know about the fire." Cause and prejudice have not been established.
 
 
 33
 The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed.R.App.P. 35.
 
 
 34
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.