**Bradley G. KAPPEL, Petitioner,**

v.

**Joan PALMATEER, Superintendent Oregon State Penitentiary, Respondent.**

**No. CIV. 99–1559–JO.**

United States District Court, D. Oregon.

March 8, 2001.

---

Christine Stebbins Dahl, Assistant Federal Public Defender, Portland, OR, for Petitioner.

Hardy Myers, Attorney General, Carolyn Alexander, Assistant Attorney General, Department of Justice, Salem, OR, for Respondent.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Petitioner, an inmate at the Oregon State Penitentiary, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Currently before the court is the petition for writ of habeas corpus. For the reasons set forth below, the petition (# 2) is DENIED and this action is DISMISSED.

## BACKGROUND

Petitioner was indicted on September 21, 1994, on charges of one count of Rape in the First Degree, three counts of Sodomy in the First Degree, and two counts of Sexual Abuse in the First Degree. The victim was petitioner's three year-old daughter. The indictment alleged that petitioner subjected his daughter to sexual contact by causing her to touch his scrotum and penis, causing her to place her mouth and tongue on his anus, placing his penis inside her mouth, and penetrating her both anally and vaginally. Each count of the indictment stated that the acts occurred "on or between the 1st day of March, 1994 and the 29th day of April, 1994."

Pursuant to plea negotiations, petitioner chose to plead guilty to two counts of Sodomy in the First Degree. The Plea Petition reflected that the maximum possible sentence for the charges was 40 years' imprisonment, and also reflected that the prosecutor would recommend a sentence of 60 months on each count, to be served consecutively. In a letter written prior to execution of the Plea Petition, petitioner's attorney had explained to petitioner the terms of the prosecutor's plea offer:

[The District Attorney] offered to dismiss counts III (Sodomy), IV (Sodomy), V (Sex Abuse) and VI (Sex Abuse), if you plead guilty to Count I (Rape) and Count II (Sodomy). He would recommend a sentence of 5 years in prison on each count to be served consecutively for a total of 10 years. After discussing the offer with you, I told you I would try to work something out that would be better for you.

On Friday, January 27, 1995, I counter-offered and suggested that you plead guilty to 1 charge of Sodomy and both of the 2 Sex Abuse counts. This would

reduce your maximum jail time to 8 years.

[The District Attorney] would not agree to go any lower than a plea to 2 class "A" felonies, but that you could choose which 2. These would be any of the first 4 counts which are Rape or any of the 3 sodomies.

After I shared that information with you, you decided that rather than have a trial, you would choose to plead guilty to counts II and IV, both Sodomies. This choice was done knowing that the Deputy District Attorney will recommend 5 years on each or a total of 10 years. At sentencing, I will argue that your sentences be concurrent (served at the same time) for a total of 5 years. It will be up to the judge to make the final determination as to the length of sentence.

At a plea hearing on February 1, 1995, the court engaged in the following colloquy with petitioner:

THE COURT: Mr. Kappel, I have before me a petition to enter a plea of guilty to sodomy in the first degree, two counts, II and IV.

Did you read this petition and discuss this with your attorney before signing this?

THE DEFENDANT: Yes, sir.

THE COURT: You're aware by a petition to enter a plea of guilty, you're waiving your constitutional rights to a jury trial, to be confronted by witnesses in open court, and to take the stand and tell your side of this?

THE DEFENDANT: Yes, sir.

THE COURT: It's indicated that the District Attorney would move to—or would seek 60 months on each count, run consecutive, and dismiss the remaining counts, I, III, V, and VI, upon sentencing. You're aware that's going to be the recommendation?

THE DEFENDANT: Yes, sir.

THE COURT: You've indicated you're entering this plea of guilty because you did commit allegations alleged in Count II and IV regarding the sodomy charges; is that right?

THE DEFENDANT: Yes, sir.

THE COURT: You're entering these pleas of your own free will?

THE DEFENDANT: Just I agree to take whatever they have, to cooperate—

THE COURT: Are doing this of your own free will or is somebody forcing you to do this?

THE DEFENDANT: It's definitely of my own free will.

Prior to petitioner's sentencing, an investigator prepared a presentence investigation ("PSI") report for the court. Much of the information in the PSI report was derived from a letter prepared by a Pediatric Social Worker who had examined the victim at some length. The letter reflected that the victim had reported the sexual events with petitioner in explicit detail. When interviewed by the investigator, petitioner denied the majority of the child's recitation of events, stating that it was a single, isolated occurrence over which he had no control. The investigator concluded that petitioner's use of his daughter's love and trust to manipulate her into satisfying his own gratification was the worst kind of abuse of all, and a "grievous psychological issue." She recommended a presumptive 60–month sentence on each count, but also listed several aggravating factors that could be used to justify an upward departure. The report did not contain the investigator's recommendation whether the sentences should be served concurrently or consecutively.

Petitioner's sentencing hearing was convened on March 10, 1995. At that time, the trial court noted that the PSI report did not contain a recommendation as to consecutive or concurrent sentences. The

prosecution acknowledged this, but nevertheless recommended the sentence set forth in the Plea Petition. Petitioner's attorney, on the other hand, argued for concurrent, rather than consecutive sentences:

> MR. KOVAC: ... Equally remarkable in this case is the information found on—at the bottom of Page 5 in which the little girl's mother is quoted to say, "I do not want him to go to prison. What he needs is help. I think that he should got to one of those halfway houses."
>
> And my client is not coming off his guilty plea. He, through the course of my representation of him, has had a very, very difficult time acknowledging this to himself and to his family and to those that know him. That is not an unusual circumstance, but in my numerous conversations with him, both in and out when he was in custody and also out of custody, has shown a consistent pattern towards the acknowledgment of this, of responsibility for this horrible thing, and that is what was picked up in the presentence report. And the report writer does make an attempt at trying to understand how this happened, and in a fairly—I don't want to—I don't want to give a negative connotation to the word "immature," but it's not a professional diagnosis although that—it appears that there may be some acknowledgment of my client's need for certainly need for treatment in this case. And he was a young person depressed and lonely, and also had been ingesting alcohol for a period of time.
>
> ...
>
> It's my thought that the treatment will be effective in his case, and it's our recommendation to the Court that he be sentenced to concurrent time, five years on Counts I and II [sic]. And once again, so as not to misspeak myself, we

are recommending that he receive some time and do a total of 60 months. And he does not have any criminal record, as you can see from his guideline work sheet. He has no felonies either adult or juvenile and no misdemeanors whatever. This is his first brush with the law and certainly one that will impact a significant portion of his adult life—not just with incarceration in prison, but the actual aftermath of that.

Expressing his concern about the lack of a recommendation in the PSI report, the trial judge recessed the sentencing hearing, which was re-convened the following Monday with the PSI investigator present. At that time, she recommended that the sentences be consecutive. The court agreed, stating:

> THE COURT: ... [T]he fact that the counts that you've plead guilty to, Count II and Count IV, are legally sufficient to impose consecutive sentences, I have to indicate that they are separate counts. Count IV is an incidental count during the commission of Count II. But they constitute a separate harm and danger to the victim.
>
> ...
>
> I think that the presentence report has set forth existing aggravating factors that they were separate incidents and that the harm was incidental and that consecutive sentences are appropriate.

Petitioner filed a notice of direct appeal. Upon the advice of his appointed appellate counsel, however, petitioner voluntarily dismissed the appeal.

Petitioner then sought state post-conviction relief, alleging claims of ineffective assistance of trial counsel, improper sentencing by the trial court, and defective plea. After an evidentiary hearing, the post-conviction court denied relief. On appeal, the Oregon Court of Appeals af-

firmed without opinion, and the Oregon Supreme Court denied review. *Kappel v. Johnson,* 159 Or.App. 309, 978 P.2d 458, *rev. denied,* 329 Or. 287, 994 P.2d 122 (1999).

On November 4, 1999, petitioner filed the instant petition for writ of habeas corpus. In it, he asserts that he was denied effective assistance of trial counsel in the following three respects:

**GROUND ONE:** Counsel told defendant that he could plead to any two of his charged offenses; But, counsel did not tell him that some had higher penalties, in that some were "A" felonies, and some were "B" felonies. Defendant, then, pled to the higher penalties.

**GROUND TWO:** Counsel failed to inform the defendant that there was not sufficient evidence to impose or give cause to multiplicity of sentencing (Consecutive sentences). Counsel permitted consecutive sentencing to take place without objection or legal advice.

**GROUND THREE:** Counsel did not want to go to trial nor actively negotiate for the best plea bargain. Instead, counsel (by letter) threatened petitioner with a 30–year sentence if petitioner did not agree to plead to two counts. Then, counsel convinced petitioner that he must plead to the crimes that just so happened to have the highest penalty.

Respondent contends that the petition for writ of habeas corpus should be denied on the bases that one of the claims in Ground Two and all of the claims in Ground Three are procedurally defaulted, and the remaining claims in Grounds One and Two lack merit.

### LEGAL STANDARDS

### I. PROCEDURAL DEFAULT

■ A state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may con-sider granting habeas corpus relief. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ A prisoner satisfies the exhaustion requirement by providing the state courts with a "full and fair" opportunity to consider his claims. *O'Sullivan,* 526 U.S. at 844–45, 119 S.Ct. 1728; *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Picard,* 404 U.S. at 275–76, 92 S.Ct. 509. A petitioner "fairly" presents his federal claims by alerting the state courts to the fact that he is asserting a claim under the United States Constitution. *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

■ Generally, when a state allows review of a constitutional violation either on direct appeal or by collateral attack, a prisoner need exhaust only one avenue before seeking habeas corpus relief. *Turner v. Compoy,* 827 F.2d 526, 529 (9th Cir.1987), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). However, if a state "mandates a particular procedure to be used to the exclusion of other avenues of seeking relief" the correct avenue must be fully exhausted. *Id.*

■ "In Oregon, most trial errors must be raised by direct appeal to the Oregon Court of Appeals." *Kellotat v. Cupp,* 719 F.2d 1027, 1030 (9th Cir.1983). However, violations of a defendant's rights which require a further evidentiary hearing for their determination, such as a claim of ineffective assistance of trial counsel, are appropriately determined upon postconviction review. *Id.; State v. McKarge,* 78 Or.App. 667, 668, 717 P.2d 656 (1986) (claim of ineffective assistance of counsel

may only be resolved in post-conviction proceeding); *see also Allbee v. Keeney*, 78 Or.App. 19, 21, 714 P.2d 1058, *rev. denied*, 301 Or. 78, 718 P.2d 744 (1986) (in order to warrant post-conviction relief, the error must be of constitutional dimension).

■■■ If it is clear that no state remedies remain available to the petitioner, the exhaustion requirement is satisfied. *See Coleman v. Thompson*, 501 U.S. at 732, 111 S.Ct. 2546; *see also Kellotat v. Cupp*, 719 F.2d at 1029. Nevertheless, habeas corpus relief must be denied if the petitioner has procedurally defaulted on a claim in state court. When a habeas petitioner at one time could have raised his federal claim in state court but did not and is now barred from doing so by a state procedural rule, he has procedurally defaulted that claim. *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■■■ When a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■■■ In order to demonstrate "cause," petitioner must show that some objective factor external to the defense impeded his efforts to raise the claim in state court. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir.1998), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 809, 142 L.Ed.2d 669 (1999); *Wood v. Hall*, 130 F.3d 373, 378 (9th Cir.1997), *cert. denied*, 523 U.S. 1129, 118 S.Ct. 1818, 140 L.Ed.2d 955 (1998); *Martinez–Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir.1996), *cert. denied*, 519 U.S. 1030, 117 S.Ct. 588, 136 L.Ed.2d 517

(1996). "Prejudice", in turn, is actual harm resulting from the alleged constitutional violation. *Vickers*, 144 F.3d at 617. In the extraordinary case, cause for procedural default may be established "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. 2639; *Keeney*, 504 U.S. at 12, 112 S.Ct. 1715.

## II. RELIEF ON THE MERITS

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■■■ A state court acts "contrary to" clearly established Federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 2119–20, 147 L.Ed.2d 125 (2000); *Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir.), *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

■■■ A state court unreasonably applies clearly established Federal law if the court identifies the correct governing legal principle from Supreme Court decisions but

unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. *Williams,* 120 S.Ct. at 1523; *Ramdass,* 120 S.Ct. at 2120; *Tran,* 212 F.3d at 1150. Under this standard of review, a federal court may not issue a writ simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. *Williams,* 120 S.Ct. at 1522. Rather, the state court decision must be objectively "unreasonable." *Id.*[1]

## DISCUSSION

### I. PROCEDURAL DEFAULT

■ Respondent contends that petitioner procedurally defaulted the first claim alleged in Ground Two and all of Ground Three. In his state post-conviction relief ("PCR") proceeding, petitioner alleged two claims of ineffective assistance of counsel:

> Petitioner relied upon trial counsel's statements that Sex Abuse I and Sodomy I carried the same amount of time when the petitioner was told to pick any two counts to plead guilty to. As a result, petitioner pled guilty to two Sodomy I counts, believing that those would carry no more time than the Sex Abuse counts.

> Trial counsel failed to object to the imposition of illegal consecutive sentences.

On appeal from the denial of post-conviction relief, in one assignment of error petitioner alleged that counsel was constitutionally ineffective for: (1) failing to advise him that he had chosen to plead guilty to counts that carried greater sentences than other counts because of their classification, and (2) failing to object to the imposition of consecutive sentences. On

petition for review in the Supreme Court, petitioner raised exactly the same claims.

Petitioner did not raise in his PCR proceeding the first claim in Ground Two of the instant petition—failure to advise that there was insufficient evidence to impose consecutive sentences. Nor did he raise the claims alleged in Ground Three, that counsel was constitutionally ineffective because he "did not want to go trial nor actively negotiate for the best plea bargain." Accordingly, petitioner procedurally defaulted these claims. Because petitioner has not established cause and prejudice or a fundamental miscarriage of justice sufficient to excuse his procedural default, he is not entitled to relief on the first claim of Ground Two or the claims alleged in Ground Three.

### II. RELIEF ON THE MERITS

The remaining claims in the petition were raised in the PCR proceeding and on appeal, and thus were exhausted. As such, this court must determine whether petitioner is entitled to relief on the merits of these claims.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. While this burden is not insurmountable, there is a strong pre-

---

**1.** The Ninth Circuit has opined that review for "clear error" "most nearly reflects the kind of respect for other courts' judgments that Congress and the Court felt was required" under

§ 2254(d)(1). *Tran,* 212 F.3d at 1152–54; *Weighall v. Middle,* 215 F.3d 1058, 1062 (9th Cir.2000).

sumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052; *Wade v. Calderon,* 29 F.3d 1312, 1316 (9th Cir.1994) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052), *cert. denied,* 513 U.S. 1120, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995).

To establish the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the " 'result of the proceeding was fundamentally unfair or unreliable.' " *United States v. Palomba,* 31 F.3d 1456, 1460–61 (9th Cir.1994) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

## A. GROUND ONE

■ In his first ground for relief, petitioner alleges that trial counsel told him that he could plead guilty to any two of his charged offenses, but failed to tell him that some had higher penalties than others. As a result, petitioner pleaded guilty to offenses with the higher penalties. The PCR trial judge considered this claim, and specifically found that it was not supported by the evidence. As the court stated, the letter petitioner received from trial counsel setting forth the plea offer:

> [C]learly indicated that his choice was to plead to two of four class A felonies— one count of Rape in the First Degree and three counts of Sodomy in the First Degree. A plea to Sexual Abuse in the First Degree was never offered by the District Attorney.

Based upon this finding, the PCR court concluded petitioner did not receive constitutionally ineffective assistance of counsel.

The PCR court's finding that petitioner was never offered a plea to Sexual Abuse I is presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. Upon a thorough review of the record, petitioner has not met that burden. Furthermore, the state court's conclusion that petitioner was not entitled to post-conviction relief was neither contrary to nor an unreasonable application of *Strickland* to the facts of this case. Accordingly petitioner is not entitled to relief on the merits of his claim that he was denied effective assistance of counsel on the basis that counsel failed to explain that some of the offenses had higher penalties than others.

## B. GROUND TWO

■ In the second part of Ground Two, petitioner alleges that he received ineffective assistance of counsel because trial counsel permitted consecutive sentencing to take place without objection or legal advice. Petitioner argues that had the sentencing court applied the correct legal standard, a concurrent sentence on the second sodomy conviction would have been imposed because the facts support only a concurrent sentence and because this was petitioner's first offense. Petitioner also argues that counsel was ineffective for "failing to articulate the proper legal standard for the imposition of consecutive sentences and to demonstrate why the statutory factual predicates had not been fulfilled."

Oregon law provides that consecutive sentences may be imposed under the following circumstances:

> (1) A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant. The

court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences.

(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

(3) When a defendant is sentenced for a crime committed while the defendant was incarcerated after sentencing for the commission of a previous crime, the court shall provide that the sentence for the new crime be consecutive to the sentence for the previous crime.

(4) When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.

(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury, or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course or conduct. O.R.S. 137.123.

■ The operation of this statute was explained by the Oregon Court of Appeals in *State v. Racicot,* 106 Or.App. 557, 809 P.2d 726 (1991). There, the court recited the history of the statute and clarified the responsibilities of the trial court. A prior version of the statute gave the trial court discretion to impose consecutive sentences "only if the court finds" the conditions stated in subsections 5(a) or (b). In addition, the trial court was required to "state its reasons for doing do and make all required special findings on the record at the time of sentencing." In 1987, the statute was revised, and as a result the sentencing court is no longer required to state its reasons for imposing consecutive sentences or make special findings on the record after it finds that consecutive sentences are authorized. Thus, the sentencing court must only find that consecutive sentences are authorized. If the record supports the imposition of the sentence, there is no abuse of discretion. *State v. Dickerson,* 112 Or.App. 51, 60, 827 P.2d 1354, *rev. denied,* 313 Or. 627, 835 P.2d 916 (1992).

Here, the state sought consecutive sentences at petitioner's sentencing. Indeed, the state's intent to do so was clearly announced in the Plea Petition executed by petitioner. The sentencing court indicated on the first day of the sentencing hearing that it was relying on the presentence investigation report. Then, after the PSI writer testified that she recommended con-

secutive sentences, the court imposed them.

The proper application of O.R.S. 137.123 by the trial court was considered and decided by the PCR court as follows:

Each count was alleged to have occurred on or between March 1, 1994 and April 29, 1994 but each count described a separate sexual act. . . . Sentencing was set for March 10. The sentencing hearing was held March 10 but was then continued until March 13 so that the judge could obtain the recommendation of the PSI writer regarding whether the Petitioner should receive concurrent or consecutive sentences. . . . During the sentencing the judge imposed consecutive sentences and found that the two crimes constituted a separate harm and danger to the victim and referred to the aggravating factors set forth in the PSI.

. . .

The record does not show that the consecutive sentences were imposed illegally. The two counts to which the petitioner entered guilty pleas describe two separate sexual acts. While it is not clear from the record whether the two acts occurred on the same day or as part of a continuous and uninterrupted course of conduct, there is still a basis for consecutive sentences. The judges [sic] finding that the separate crimes constituted a separate crime or harm to the victim satisfies the requirement of ORS 137.123(5)(b) which allows consecutive sentences for crimes committed during a continuous and uninterrupted course of conduct if the court finds that the crime for which the consecutive sentence is contemplated caused a qualitatively different harm to the victim than the first crime for which the defendant is sentenced. There is also a factual basis to support this finding since the two charges describe a separate sexual act committed upon the victim.

The PCR court correctly concluded that the consecutive sentences were not illegally imposed. Notwithstanding the trial court's extraneous reference to Count IV as "incidental" to Count II, the fact remains that the statutory requirements for the imposition of consecutive sentences were met. The two counts of Sodomy in the First Degree to which petitioner pleaded guilty were separate, distinct acts which caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim.

Because the trial court did not err in imposing consecutive sentences, petitioner did not received ineffective assistance of counsel as a result of his attorney's failure to object to the sentences. As such, the PCR court's conclusion that petitioner was not entitled to post-conviction relief was neither contrary to nor an unreasonable application of *Strickland* to the facts of this case. Accordingly, petitioner is not entitled to relief on the merits of his claim that he was denied effective assistance of counsel when counsel failed to object to imposition of consecutive sentences.

### CONCLUSION

Based on the foregoing, IT IS ORDERED that the petition for writ of habeas corpus (# 2) is DENIED, and this action is DISMISSED.

IT IS SO ORDERED.