**Alan Leonard BROWN, Petitioner**

v.

**James YATES, Warden, Respondent.**

**Case No. EDCV 09–0423–VBF(RC).**

United States District Court,
C.D. California.

Nov. 18, 2010.

Alan Leonard Brown, San Quentin, CA, pro se.

Marvin E. Mizell, CAAG, Office of Attorney General of California, San Diego, CA, for Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND ORDER DENYING CERTIFICATE OF APPEALABILITY

VALERIE BAKER FAIRBANK, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

This Court finds an appeal would not be taken in good faith, and that petitioner has not made a substantial showing that he has been denied a constitutional right, for the reasons set forth in the Report and Recommendation of the United States Magistrate Judge; accordingly, a certificate of appealability should not issue under 28 U.S.C. § 2253(c)(2) and Fed. R.App. P. 22(b). *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *Mayfield v. Calderon*, 229 F.3d 895, 900 (9th Cir.2000).

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Valerie Baker Fairbank, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On June 26, 2006, in Riverside County Superior Court case no. RIF125140, a jury convicted petitioner Alan Leonard Brown of one count of second degree murder in violation of California Penal Code ("P.C.") § 187(a) (count 1), one count of driving under the influence causing bodily injury in violation of California Vehicle Code ("Veh. C.") § 23153(a) (count 2), and one count of driving with a blood alcohol content of .08 percent or greater causing bodily injury in violation of Veh. C. § 23153(b) (count 3), and, as to counts 2

and 3, the jury found petitioner inflicted great bodily injury on two victims who were not accomplices to the offense within the meaning of P.C. §§ 12022.7(a) and 1192.7(c)(8). Clerk's Transcript ("CT") 318–19, 343–49. In a bifurcated proceeding, petitioner pleaded guilty to, and was convicted of, one count of misdemeanor driving with a suspended license in violation of Veh. C. § 14601.2(a) (count 4). CT 261–62. The trial court sentenced petitioner to the indeterminate sentence of 15–years–to–life on count 1 and the consecutive determinate term of 8 years on count 2, for the total term of 23 years to life in state prison.[1] CT 367–72.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 373, which affirmed the judgment in an unpublished opinion filed October 30, 2007. Lodgment nos. 3–6. On November 30, 2007, petitioner filed a petition for review in the California Supreme Court, which denied review on January 3, 2008. Lodgment nos. 7–8.

## II

The California Court of Appeal made the following factual findings underlying petitioner's convictions:[2] At around 2:00 a.m. on July 21, 2005, Christian Esquivel was driving his mother's car with two passengers, in Corona. He stopped at a flashing red light at the intersection of Sixth Street and Smith, looked to his left, and saw a red car coming. He could not determine its speed. Esquivel proceeded into the intersection. The red car, which had been spotted by police officers speeding just moments before, did not slow down or stop. Officer Robert Paul, who had responded to a call for assistance regarding the speeding car, drove to the intersection of Sixth and Smith in time to observe a

collision between the red car and Esquivel's car. Officer Paul estimated that the red car was going approximately 100 miles per hour. Esquivel's car spun around, stopped at the curb, and immediately caught on fire. One of Esquivel's passengers was ejected from the car and died as a result of blunt force head trauma. Esquivel and the other passenger were pulled out of and away from the burning car and were hospitalized for several days.

After hearing about the collision, Officer Jason Morris drove to the scene of the accident. He saw other officers tending to the burning car at the intersection of Sixth and Smith so he drove further west on Sixth Street, where he saw the red car, which was turned over on its roof. He approached the car and noticed one male occupant in it—petitioner. As Officer Morris dragged petitioner out of the car, petitioner cried out in pain. A large can of beer fell out of the car with him. Officer Morris dragged petitioner 10 to 15 feet away from the car and waited with him for paramedics to arrive. At that point in time, he did not arrest petitioner or handcuff him because he had no reason to do so. While Officer Morris was waiting with petitioner, he asked him some questions about the collision and tape recorded the conversation with a digital tape recorder. Officer Morris asked petitioner, "What happened, dude?" Petitioner said he went through a stop sign. Officer Morris asked him if he had been drinking, and then asked how much he had been drinking. Petitioner replied, "Not enough." Officer Morris asked him a few other brief questions, including where he was in pain, which way he was driving, what and where he was drinking, if he was wearing his seatbelt, and how fast he was going.

---

**1.** Petitioner's sentence on count 3 was stayed, and he was sentenced to a concurrent 180–day sentence on count 4. CT 367–72.

**2.** Lodgment 6 at 3–5.

When the paramedics arrived, they placed petitioner in an ambulance and drove him to the hospital, unaccompanied by any police officer. Officer Morris drove to the hospital in his police car.

Police Investigator Bryan Wilson, a traffic investigator and accident reconstructionist, arrived at the scene of the collision at 2:30 a.m. From his investigation, he concluded petitioner was driving between 93 and 113 miles per hour, while Esquivel was driving between 16 and 21 miles per hour.

Investigator Wilson interviewed petitioner at the hospital at 9:30 a.m., later that morning. Petitioner told Investigator Wilson that he had previously been arrested for driving under the influence (DUI) twice, once causing a collision. He told Investigator Wilson that his license was currently suspended because he was supposed to have an ignition interlock device installed in his car, but he never did. His license had been suspended for the past 12 years. He also stated he completed a DUI program 15 years ago, but failed to complete the program the second time. Petitioner admitted that the current collision was his fault. He said he was speeding down the street to catch the green lights. In addition, he told Investigator Wilson that he was taking Prozac and Trazodone. Investigator Wilson subsequently obtained petitioner's prescription bottles from his mother. Both bottles contained warning labels stating that the drugs could cause drowsiness, which could be intensified by alcohol.

A blood sample was taken from petitioner at 3:05 a.m., and his blood alcohol level was .19. The test also revealed Prozac and Trazodone in his blood.

### III

On February 27, 2009, petitioner, proceeding pro se, filed a habeas corpus petition under 28 U.S.C. § 2254, and on June 18, 2009, respondent filed his answer. The petitioner filed a reply on August 27, 2009.

The petition raises the following claims:

Ground One—Petitioner's "Fifth Amendment right to remain silent and Fourteenth Amendment right to due process were violated by the admission in evidence of statements [petitioner] made to police at the scene of the traffic collision" since the statements were admitted in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Petition at 5, 14–15, 28–33); and

Ground Two—"Imposition of consecutive sentences based partly on facts not reflected in the jury's verdict nor found true beyond a reasonable doubt violated [petitioner's] Sixth Amendment right to trial by jury and Fourteenth Amendment right to due process." (Petition at 5, 16–17, 34–38).

### DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Gaston v. Palmer*, 417 F.3d 1030, 1038 (9th Cir.2005), *amended by*, 447 F.3d 1165 (9th Cir.2006), *cert. denied*, 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioner's claims, this Court will consider the reasoned opinion of the California Court of Appeal, which denied the claims on the merits. *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir.2010); *Vasquez v. Kirkland*, 572 F.3d 1029, 1035 (9th Cir.2009), *cert. denied*, ── U.S. ──, 130 S.Ct. 1086, 175 L.Ed.2d 908 (2010).

## V

The Fifth Amendment privilege against self-incrimination provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." In *Miranda*, the Supreme Court established a prophylactic procedural mechanism to safeguard a defendant's Fifth Amendment privilege against the inherently coercive effects of custodial interrogation. *Miranda*, 384 U.S. at 457–58, 86 S.Ct. at 1619. Thus, *Miranda* requires that before questioning a suspect in custody, law enforcement officials must inform the suspect that:

He has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 444, 478–79, 86 S.Ct. at 1612, 1630; *Berghuis v. Thompkins*, ── U.S. ──, 130 S.Ct. 2250, 2259, 176 L.Ed.2d 1098 (2010); *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000). No additional warnings are required under *Miranda*. *United States v. Lares–Valdez*, 939 F.2d 688, 689–90 (9th Cir.1991) (per curiam).

■ In Ground One, petitioner claims the trial court violated his right to remain silent and his right to due process of law when it admitted into evidence statements he made to police at the accident scene since those statements were obtained in violation of *Miranda*. The California Court of Appeal, in affirming petitioner's convictions, set forth the following procedural background of this claim:

A preliminary hearing was held on December 2, 2005. Officer Morris ... testified at the preliminary hearing that he asked [petitioner] questions about what happened after the collision. When the prosecutor asked Officer Morris what [petitioner] told him, [petitioner] objected, based on *Miranda*. After initially overruling the objection, the court sustained it. A lengthy discussion then ensued about whether [petitioner] was free to leave and if *Miranda* applied. During the discussion, the court asked Offi-

cer Morris if he would have allowed [petitioner] to walk away while he was questioning him. Officer Morris replied, "Absolutely not, sir, because I have a duty to investigate the traffic accident." The prosecutor requested the court to admit the evidence of [petitioner's] statements to Officer Morris, subject to a motion to strike at the end of the hearing. The court agreed to do so. It then continued the preliminary hearing to December 16, 2005.[¶] At the continued preliminary hearing, Officer Morris testified that [petitioner] was not in custody at the time he was asking questions about the collision. Officer Morris asked [petitioner] how fast he was going, and if he had had any alcohol to drink. In response to the latter question, [petitioner] said, " 'Not enough.' " At that point, Officer Morris said he ceased questioning [petitioner], and the paramedics took [petitioner] to the hospital. [¶] At the close of evidence at the preliminary hearing, the court asked the parties to address [petitioner's] *Miranda* objection to Officer Morris's testimony regarding [petitioner's] statements made at the scene of the collision and at the hospital. The court then denied [petitioner's] request to suppress the statements, citing *Berkemer v. McCarty* (1984) 468 U.S. 420 [104 S.Ct. 3138, 82 L.Ed.2d 317] (Berkemer) and other cases. [¶] Subsequently, [petitioner] filed a motion in limine to suppress his statements made to Officer Morris at the scene of the collision. He claimed that he was in custody and should have been given *Miranda* warnings before being questioned, considering the circumstances that: 1) he caused a major traffic accident and the police were on the scene; 2) Officer Morris testified at the preliminary hearing that he was not allowed to leave, pending investigation of the collision; and 3) Officer Morris knew that [petitioner] was not going to

get up and leave, given his injuries. The court concluded that the interview that occurred at the scene of the collision did not constitute a custodial interrogation, within the meaning of *Miranda.* The court specifically noted that the contact between Officer Morris and [petitioner] was relatively brief, and that the officer simply presented "an open-ended question, 'What happened?' and a few follow-up questions."

Lodgment no. 6 at 6–7. The California Court of Appeal then concluded *Miranda* did not apply because petitioner was not in custody when he spoke with Officer Morris, stating:

"It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " "Custody determinations are resolved by an objective standard: Would a reasonable person interpret the restraints used by the police as tantamount to a formal arrest? The totality of the circumstances surrounding an incident must be considered as a whole." Objective indicia of custody for *Miranda* purposes include: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." [¶] In *Berkemer*, the United States Supreme Court concluded that an officer's roadside questioning of a motorist detained pursuant to a routine traffic stop did not constitute custodial interrogation for *Miranda* purposes. The Court noted that the "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief." The court then contrasted a stationhouse interrogation, "which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he pro-

vides his interrogators the answers they seek." [¶] Here, [petitioner] has failed to demonstrate that he was subjected to restraints comparable to those associated with a formal arrest. When Officer Morris questioned [petitioner], he had not been formally arrested. The length of the questioning was very brief, as noted by the court. [Petitioner] was questioned at the scene of the collision, not a police station. This public atmosphere, in which passersby could view the interaction, was "substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself. . . ." Officer Morris was the only officer questioning [petitioner], and the questions were open-ended, nonaccusatory, and investigative. The officer simply asked questions to aid his investigation of the collision. (i.e., What happened? Were you drinking? How fast were you going? Were you wearing a seatbelt?) Even after questioning [petitioner], Officer Morris did not place him under arrest. He waited with him for the paramedics to arrive. [Petitioner] then went to the hospital in the ambulance, unaccompanied by any police officer. [¶] Although Officer Morris told the court he would not have allowed [petitioner] to walk away while he was questioning him because he had a duty to investigate the accident, his intention was not communicated to [petitioner]. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." [¶] Considering the totality of the circumstances surrounding the questioning of [petitioner], we conclude he was not in custody and was thus not entitled to *Miranda* warnings.

Lodgment no. 6 at 8–10 (citations omitted). Alternately, the California Court of Appeal concluded that any error in admitting petitioner's statement was harmless:

[Petitioner] argues that the court's admission of his comment, "Not enough" (his response when Officer Morris asked him how much he had to drink), was prejudicial error, since the prosecutor allegedly used that statement to prove implied malice. Any error in admitting that statement was harmless beyond a reasonable doubt. [¶] [Petitioner] correctly points out that the prosecution used [his] statement, "Not enough," in his closing argument. The prosecutor argued that, after [petitioner] had been drinking for four hours, his attitude was that he had not had enough, and that remark said a lot about his disregard for the lives and safety of others. However, there was an abundance of other evidence that showed [petitioner's] conscious disregard for life. [Petitioner] admitted during his interview with Investigator Wilson that he had two previous arrests for driving under the influence—one of which involved a collision. [Petitioner] was required to, and did, complete a DUI program, as a result. This fact alone showed that [petitioner] had knowledge of the dangers of driving under the influence. He also admitted that he failed to complete the DUI program the second time he was supposed to take it. At the time of the current collision, [petitioner] was driving with a license that had been suspended for 12 years. He admitted that he was supposed to install an ignition interlock device, but never did. Moreover, [petitioner] took Prozac and Trazodone that day, and, despite the warnings against mixing drugs with alcohol, he consumed so much alcohol that his blood alcohol level was .19 percent. He then drove his car between 93 and 113 miles per hour. In light of this evidence, which clearly displays [petitioner's] implied malice, any

error in admitting his statement was harmless beyond a reasonable doubt. Lodgment no. 6 at 10–11.

The warnings under *Miranda* only apply to a suspect in "custodial interrogation," which is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612; *Yarborough v. Alvarado*, 541 U.S. 652, 661, 124 S.Ct. 2140, 2148, 158 L.Ed.2d 938 (2004); *see also Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' "); *Stanley v. Schriro*, 598 F.3d 612, 618 (9th Cir.2010) ("Under clearly established federal law, *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." (citations and internal quotation marks omitted)). "[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances." *Alvarado*, 541 U.S. at 662, 124 S.Ct. at 2148. This requires the courts to consider:

> first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995)

(footnote and internal punctuation omitted); *Alvarado*, 541 U.S. at 663, 124 S.Ct. at 2149; *see also Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528–29, 128 L.Ed.2d 293 (1994) (per curiam) ("In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (citations omitted)).

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" does not constitute custodial interrogation or require *Miranda* warnings. *Miranda*, 384 U.S. at 477–78, 86 S.Ct. at 1629–30. Thus, the Supreme Court has held that when a single police officer stops a vehicle and asks the driver "a modest number of questions[,]" including "whether he had been using intoxicants[,]" and "request[s] him to perform a simple balancing test at a location visible to passing motorists[,]" the driver was not subjected to custodial interrogation and no *Miranda* warnings were required. *Berkemer v. McCarty*, 468 U.S. 420, 423, 441–42, 104 S.Ct. 3138, 3141, 3151–52, 82 L.Ed.2d 317 (1984); *see also Pennsylvania v. Bruder*, 488 U.S. 9, 10–11, 109 S.Ct. 205, 206–07, 102 L.Ed.2d 172 (1988) (per curiam) (*Miranda* not implicated during traffic stop in which officer, after smelling alcohol on driver and observing his stumbling movements, administered field sobriety tests and "inquired about alcohol[,]" eliciting incriminating response).

Here, it is undisputed that petitioner was not under arrest at the time Officer Morris briefly questioned him at the accident scene.[3] Moreover, as the California

---

**3.** Although the ultimate inquiry about whether a defendant was "in custody" for *Miranda* purposes is a mixed question of law and

Court of Appeal found, the questions Officer Morris asked petitioner "were open-ended, non-accusatory, and investigative." [4] Lodgment no. 6 at 9. Further, petitioner was allowed to leave the scene without being placed under arrest when he was transported to the hospital unaccompanied by a police officer. Thus, based on the totality of the circumstances surrounding the discussion between Officer Morris and petitioner, it is clear petitioner was not in custody or subjected to custodial interrogation, and thus, no *Miranda* warnings

were required.[5] *See Vickers v. Stewart,* 144 F.3d 613, 616–17 (9th Cir.1998) ("There is no custodial interrogation when asking what happened in an emergency situation."), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 809, 142 L.Ed.2d 669 (1999); *Cordoba v. Hanrahan,* 910 F.2d 691, 693–94 (10th Cir.) (no *Miranda* violation when officer arrived at accident scene, inquired about what happened, and defendant admitted he had been drinking and driving since "[a]n officer arriving at the scene of an accident … may ask a person appar-

fact, the initial inquiry regarding "the circumstances surrounding the interrogation" is "distinctly factual[,]" and state court findings about the circumstances surrounding the interrogation are entitled to a presumption of correctness. *Thompson,* 516 U.S. at 112–13, 116 S.Ct. at 465. Here, petitioner has not rebutted the California Court of Appeal's factual findings regarding the facts and circumstances surrounding Officer Morris's questioning of him at the accident scene; therefore, the Court presumes such findings are correct. 28 U.S.C. § 2254(e)(1); *Tilcock v. Budge,* 538 F.3d 1138, 1141 (9th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 926, 173 L.Ed.2d 132 (2009).

4. Specifically, these questions were:
[Morris]: Hey, what happened to you?
[Pet.]: Umm, absolutely … went through the stop sign.
[Morris]: Huh?
[Pet.]: Went through the stop sign.
[Morris]: Been drinking?
[Pet.]: Yup.
[Morris]: What you been drinking?
[Pet.]: Not enough.
[Morris]: Not enough?
[Pet.]: No.
[Morris]: Where are you hurting?
[Pet.]: Like everywhere, right now.
[Morris]: OK. Which way were you going, do you know?
[Pet.]: Yeah.
[Morris]: Which way?
[Pet.]: Uh, like, west.
[Morris]: West, on Sixth Street?
[Pet.]: Yes.
[Morris]: OK, and are you the only one that was in your car?
[Pet.]: Yes.

[Morris]: OK.. What's your name?
[Pet.]: Alan Brown.
[Morris]: Is that what you've been drinking, is a Miller Lite?
[Pet.]: Miller Lite.
[Morris]: Where at?
[Pet.]: Bar.
[Morris]: Bar, which bar?
[Pet.]: Um, I left the bar at, um, karaoke bar at, on Grand … oh, my legs …
[Morris]: Stay still.
[Pet.]: … hurt bad.
[Morris]: Were you wearing your seatbelt, do you know?
[Pet.]: Yeah, I was wearing my seatbelt. [¶] *Man, my face is smashed, so bad.*
[Morris]: How old are you?
[Pet.]: Um, 44 this … 26th this month.
[Morris]: Do you know how fast you were going before you got into the wreck?
[Pet.]: Yeah, about fucking 45, 55 something …
[Morris]: Something like that?
[Pet.]: Yeah.
[Morris]: Alright.
[Pet.]: Just get the picture of my daughter out of the car, OK?
[Morris]: What happened?
[Pet.]: Get the pictures out of the car of my daughter.
[Morris]: OK.
[Pet.]: OK?
CT 268–70.

5. Since the Court finds no constitutional violation, it is not necessary to address the California Court of Appeal's alternate harmless error holding.

ently involved in the accident a moderate number of questions to determine whether he should be issued a traffic citation, whether there is probable cause to arrest him, or whether he should be free to leave after the necessary documentation has been exchanged"), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990), *overruled in part on other grounds as recognized in, United States v. Erving L.,* 147 F.3d 1240 (10th Cir.1998).

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI

 In Ground Two, petitioner claims the trial court erred in sentencing him to consecutive terms based on factual findings made by the trial court and not by a jury. Petition at 6. There is no merit to this claim.

The California Court of Appeal denied this claim, holding *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), "did not address the constitutionality of California's Determinate Sentencing Law (DSL) pertaining to a trial court's decision to impose concurrent or consecutive sentences." Lodgment no. 6 at 11. Recently, the United States Supreme Court has come to the same conclusion, holding the Sixth Amendment does not require juries to make findings of fact regarding the imposition of consecutive sentences, and the states may allow their judges to make those factual findings. *Oregon v. Ice,* 555 U.S. 160, 129 S.Ct. 711, 714–15, 172 L.Ed.2d 517 (2009); *see also Aburto v. Campbell,* 341 Fed.Appx. 304, 306 (9th Cir.2009) ("It does not violate the Sixth Amendment for judges—rather than juries—to find facts necessary to determine whether multiple sentences should be imposed consecutively.").

Therefore, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: August 24, 2010

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition is denied and the action is dismissed with prejudice.